United States District Court
For the Northern District of California

1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6

7   In re DYNAMIC RANDOM ACCESS
    MEMORY (DRAM) ANTITRUST
8   LITIGATION                                    No. M 02-1486 PJH
    _____/
9                                                 **ORDER GRANTING IN PART**
    This Document Relates to:                     **AND DENYING IN PART DEFENDANTS'**
10                                                **MOTION TO DISMISS**
    State of New York v. Micron et al.
11  (C 06-6436 PJH)
    _____/
12

13          Defendants' motion to dismiss plaintiff's complaint came on for hearing before this

14  court on February 7, 2007.  Plaintiff, the State of New York acting through its Attorney

15  General, appeared through its counsel, Jeremy R. Kasha and Richard L. Schwartz.

16  Defendants appeared through their counsel, Julian Brew, Ronald C. Redcay, Joel S.

17  Sanders,  Peter Nemerovski,  Kenneth R. O'Rourke, Harrison J. Frahn, Gary L. Halling,

18  and Robert B. Pringle.  Having read all the papers submitted and carefully considered the

19  relevant legal authority, the court hereby GRANTS defendants' motion to dismiss in part

20  and DENIES the motion to dismiss in part, for the reasons stated at the hearing, and as

21  follows.

22                              **BACKGROUND**

23          The instant case is part of a broader antitrust MDL action currently pending before

24  the court.  Plaintiff, the State of New York, like various other plaintiffs in the MDL action,

25  generally alleges a horizontal price-fixing conspiracy in the U.S. DRAM market for dynamic

26  random access memory ("DRAM"), carried out by numerous manufacturer defendants.[1]

27  _____

28          [1]     The named defendants are:  Micron Technology, Inc.; Micron Semiconductor
    Products, Inc.; Infineon Technologies AG; Infineon Technologies North America Corp.; Hynix
    Semiconductor, Inc.; Hynix Semiconductor America, Inc.; Samsung Electronics Co., Ltd;

A.      Background Allegations and Claims

Plaintiff's complaint alleges that beginning in 1999, defendants entered into a "secret, worldwide conspiracy designed to eliminate competition" in the U.S. market for DRAM.  See Complaint at ¶ 2.  Defendants did so by allegedly coordinating the prices they charged to large computer manufacturers ("OEM"s) and other customers.  Id.  Plaintiff alleges that, over a period of three years, defendants engaged in hundreds, if not thousands, of pricing communications, in order to succeed in their principal objective to control and artificially raise DRAM prices.  Id.  As a result, plaintiff alleges that consumers of computers and other digital devices paid more for DRAM, or purchased less of it, than they would have in a competitive market.  Id.

Plaintiff contends that defendants' conspiracy caused "enormous damage to users of DRAM-containing products and DRAM memory chips."  Complaint at ¶ 5.  Among those damaged, according to plaintiff, were New York residents, businesses, schools and government entities, all of whom purchased significant quantities of products containing price-fixed DRAM chips.  Id.  To that end, plaintiff State of New York brings the instant action in its own proprietary capacity, and as parens patriae and as authorized by law on behalf of its consumers – both natural persons and entities.  See Complaint, ¶ 10. Specifically, plaintiff brings this action on behalf of:  (a) "state and local government branches, departments, agencies, subdivisions and other entities" ("government entities") that purchased DRAM or DRAM products from defendants *directly or indirectly*; and (b) natural persons in New York who purchased DRAM or DRAM products from defendants *indirectly*.  See id.

Plaintiff's complaint, which was filed on July 13, 2006, asserts four causes of action against defendants: (1) a federal antitrust claim for violation of Section 1 of the Sherman Act; (2) a state antitrust claim for violation of New York's Donnelly Act; (3) a claim pursuant

Samsung Semiconductor, Inc.; Mosel Vitelic Corp.; Mosel Vitelic, Inc.; Nanya Technology Corporation; Nanya Technology Corporation USA, Inc.; Elpida Memory, Inc.; Elpida Memory (USA), Inc.; and NEC Electronics America, Inc. (collectively "defendants").

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

to New York's Executive Law § 63(12), which allows the State Attorney General to enjoin "fraudulent or illegal acts" in the "carrying on, conducting or transaction of business"; and (4) a claim pursuant to California's state antitrust statute, the Cartwright Act.  See, e.g., Complaint at ¶¶ 81-86, 87-92, 93-95, 96-101.

B.    The Instant Motion

Defendants seek dismissal in part of plaintiff's first and second causes of action, and dismissal of plaintiff's third and fourth causes of action in their entirety.[2]  In particular, defendants seek dismissal of (1) the Sherman Act claim to the extent it is based on indirect purchases and seeks recovery on behalf of unnamed government entities; (2) New York's claim for a civil penalty under the Donnelly Act; (3) claims under New York's Executive Law § 63(12); and (4) New York's Cartwright Act claim.

**DISCUSSION**

A.    Legal Standard

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level."  See Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007).   While the complaint "does not need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  Twombly, 127 S. Ct. at 1974.

---

[2]     Defendants have also filed a motion to dismiss similar claims alleged in a separate but related case brought by forty other plaintiff States acting through their Attorneys General.  See State of California et al. v. Infineon Technologies AG, et al., case no. C 06-4333 PJH.  The merits of that motion are discussed by way of a separate order, filed concurrently herewith.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.    Sherman Act Claim

Defendants raise two issues regarding plaintiff's first claim for relief under the Sherman Act.  First, defendants argue that plaintiff's complaint impermissibly seeks damages for injuries sustained by indirect purchasers, in violation of the federal Illinois Brick doctrine.  See Mot. at 3:1-10; Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).  Second, defendants contend that plaintiff also impermissibly asserts claims on behalf of state and local government entities.  Defendants contend, therefore, that all claims brought on behalf of indirect purchasers or government entities, must be dismissed.

1.    indirect purchaser claims

Defendants rely on paragraphs 10 and 86 of plaintiff's complaint in order to make their point.  Paragraph 86, which sets forth plaintiff's Sherman Act claim, alleges that "the State is entitled to recover treble damages, *based on the injury that the State Entities suffered* as a result of Defendants' illegal conduct" (emphasis added).  The phrase "State Entities" is in turn defined in paragraph 10 to include all state and local government entities who purchased DRAM or DRAM products "directly *or* indirectly" from defendants (emphasis added).  Defendants argue that, reading these allegations together, it is undisputed that plaintiff's Sherman Act claim seeks recovery, at least in part, for injuries suffered by indirect purchasers – something that Illinois Brick prohibits.  Plaintiff concedes that Illinois Brick does not allow for recovery of indirect purchaser injuries, but states that its Sherman Act claim "is brought solely on behalf of the State and other non-State public entities that are direct purchasers."  See Opp. Br. at 3:18-19.[3]

Defendants' argument is valid.  A logical reading of the allegations contained in plaintiff's complaint – and specifically paragraph 86, as modified by paragraph 10 – does suggest that plaintiff is seeking damages based in part, on indirect purchases made by

_____

[3]    Plaintiff contends that direct purchaser status is given to it and to other government entities by operation of an assignment clause contained in a Centralized Contract between one of plaintiff's state agencies and certain OEMs, as well as by operation of the "control exception" to Illinois Brick.  See 431 U.S. at 736 n. 16 (exception to indirect purchaser prohibition might apply "where the direct purchaser is owned or controlled by its customer").

4

**United States District Court**
For the Northern District of California

1    government entities.  Notwithstanding the fact that plaintiff concedes that it can only

2    proceed as to direct purchaser claims, and its avowal that it seeks to do so, the allegations

3    of plaintiff's complaint indicate otherwise.  To the extent the complaint states as much,

4    therefore, these indirect purchaser claims are barred pursuant to <u>Illinois Brick's</u> well-

5    established prohibition on such claims.

6         Accordingly, the court hereby DISMISSES all claims brought pursuant to the

7    Sherman Act that seek recovery on behalf of indirect purchasers, to the extent such claims

8    are pled in paragraphs 86 and 10 of the complaint.

9                        2.    government entities

10        Even once all claims brought under the Sherman Act are whittled down to direct

11   purchaser claims, defendants challenge plaintiff's ability to assert such claims on behalf of

12   other government entities (i.e., "state and local government branches, departments,

13   agencies, subdivisions and other entities").  <u>See</u> Complaint at ¶¶ 10, 86.  Defendants argue

14   that such representative claims are barred here, as neither federal nor state statute

15   authorizes representative claims for damages.  Plaintiff, for its part, contends that its'

16   representative claims are permissible for two reasons: first, because all government entities

17   here have expressly assigned their antitrust claims to plaintiff State of New York, thereby

18   giving plaintiff standing to assert claims on their behalf.  Second, plaintiff argues that New

19   York statutory authority does permit plaintiff's Sherman Act claim on behalf of government

20   entities.

21        Generally speaking, a state and its political subdivisions are considered "persons"

22   for purposes of securing treble damages under the Sherman Act pursuant to section 4 of

23   the Clayton Act.  <u>See, e.g., Hawaii v. Standard Oil Co.</u>, 405 U.S. 251, 260-61 (1972); 15

24   U.S.C. § 15.  As such, these government entities may bring suits for monetary damages,

25   and most often do, in their proprietary capacities.  <u>See, e.g., Standard Oil Co. of California</u>

26   <u>v. Arizona,</u> 738 F.2d 1021, 1023 (9th Cir. 1984)("it is well established that states are

27   "persons" capable of bringing treble damage actions under the Sherman and Clayton Acts).

28

                                          5

**United States District Court**
For the Northern District of California

1    Here, however, while plaintiff State of New York does bring suit in its own name and in its

2    proprietary capacity, it also asserts claims on behalf of other government entities.  See

3    Complaint at ¶¶ 10, 86.  Normally, a plaintiff state might assert such a representative claim

4    by bringing a class action on behalf of the other government entities.  See Fed. R. Civ.

5    Proc. 23.  Plaintiff has not alleged a class action.  As such, the issue for the court is

6    whether plaintiff nonetheless has the authority to assert a representative claim on behalf of

7    government entities.

8         Preliminarily, defendants are correct that the federal Clayton Act does not permit

9    representative claims on behalf of other government entities.  See 15 U.S.C. § 15.  The

10   Clayton Act *does* allow a state attorney general to bring a parens patriae claim on behalf of

11   natural persons, but that provision expressly limits parens patriae actions to those brought

12   on behalf of natural persons, and does not include corporations, partnerships, or

13   proprietorships.  See id. at § 15c(a)(1).  By extension, government entities are similarly

14   excluded from the definition of natural person.

15        Since the Clayton Act does not grant plaintiff standing to sue on behalf of the

16   government entities alleged in the complaint, the question is whether any other source of

17   law grants the standing sought.  Or more specifically, the question is whether New York

18   state law provides standing.  For as the Ninth Circuit has stated, "in determining whether a

19   state has standing to sue on behalf of its constituent units under the federal antitrust laws,

20   the federal court must look to the applicable state law."  See, e.g., Alaska v. Chevron, 669

21   F.2d 1299, 1302 (9th Cir. 1982)(holding that where state of Alaska would permit its attorney

22   general to bring antitrust action on behalf of state university and state university would have

23   direct purchaser standing, state of Alaska could sue as direct purchaser on behalf of state

24   university).  Although the Chevron case involved the state's right to sue on behalf of a state

25   entity only, and not on behalf of non-State public entities such as the local government

26   entities alleged here, see, e.g., Complaint at ¶ 10, Chevron's reasoning is nonetheless

27   applicable.  As such, if plaintiff can demonstrate that applicable New York law grants it

28

6

United States District Court

For the Northern District of California

1    standing to sue on behalf of other government entities, it will have standing here.

2         Plaintiff attempts to prove that standing exists by virtue of (1) certain assignment

3    clauses contained in various contracts entered into by the government entities in question;

4    and (2) New York statutory authority.

5         With respect to the former, plaintiff alleges that the government entities in question

6    generally made purchases of DRAM-containing products from OEMs, who in turn

7    purchased DRAM directly from defendants.  See Complaint at ¶ 72.  However, many

8    government entities made their purchases from OEMs pursuant to a Centralized Contract

9    entered into by the State of New York's Office of General Services ("OGS"), and the OEMs.

10   Id. at ¶ 73.  Plaintiff alleges that the government entities' purchase of DRAM-containing

11   products – specifically, computers – from OEMs actually qualify as *direct* purchases of

12   DRAM from defendants, because the Centralized Contract contains an assignment clause

13   that reads: "the "Contractor hereby assigns to the State any and all its claims ... which may

14   arise under the antitrust laws of the United States ... and the antitrust laws of the State of

15   New York....".  See id. at ¶¶ 74-75.  Plaintiff here argues that, by virtue of this assignment

16   clause, each government entity has assigned its direct purchaser claims to the State of

17   New York, thereby granting plaintiff standing to sue on their behalf.

18        This argument is problematic.  To begin with, plaintiff has not cited to any legal

19   authority establishing that assignment of a federal antitrust claim from government entities

20   to the State of New York confers standing on plaintiff to bring a representative suit for

21   damages under the Clayton Act.  But see Com. of Pa. v. Milk Industry Management Corp.,

22   812 F. Supp. 500 (E.D. Pa. 1992)(school district's assignment of its antitrust cause of

23   action to Pennsylvania's Attorney General gave Pennsylvania standing to maintain *parens*

24   *patriae* action on behalf of state entity against dairies for alleged bid-rigging).  Even

25   assuming, however, that a contractual assignment of rights *can* convey standing to sue, the

26   fact remains that plaintiff has not demonstrated that any valid assignment has taken place

27   between appropriate parties.  Under the terms of the assignment clause in the Centralized

28

7

United States District Court

For the Northern District of California

1   Contract, it is the "contractor" who assigns all antitrust claims to the state of New York.

2   See NY AG Complaint, ¶ 75.  But, as alleged in the complaint, it is the *OEMs* who are the

3   contracting parties.  See id. at ¶¶ 73-75.  In other words, it is the *OEMs* who have assigned

4   their claims to the State of New York, *not* the government entities on whose behalf plaintiff

5   purports to sue.  This makes sense, since it is the OEMs who are alleged to have

6   purchased DRAM directly from defendants.  It also, however, means that plaintiff's

7   assertion that government entities have assigned direct purchaser claims to it via the

8   assignment clause, is wrong.[4]  As such, the court concludes that plaintiff's representative

9   claim brought on behalf of government entities, if it is to go forward, cannot be rooted in the

10  Centralized Contract's assignment clause.

11       The question remains whether plaintiff's representative claim can go forward based

12  upon New York statutory law.  Plaintiff argues that the State Attorney General has the

13  express authority to bring suit on behalf of government entities pursuant to N.Y. Gen. Bus.

14  Law § § 340-347 et seq. (the "Donnelly Act"), and N.Y. Executive Law §§ 63(1) and 63-c(1).

15  Defendants, however, challenge plaintiff's reliance on either state statute, arguing that no

16  provision allows the state to sue on behalf of *unnamed* government entities.

17       Defendants have the better argument.  The Donnelly Act does, as plaintiff notes,

18  give the State Attorney General the right to bring an action "on behalf of any political

19  subdivision or public authority of the state... to recover damages provided for by federal law

20  for violations of the federal antitrust laws...".  See N.Y. Gen. Bus. Law § 342-b.  However,

21  the text of this provision also states that the action is to be brought "upon the request of

22  such political subdivision or public authority."  See id.  And as defendants point out, there is

23  _____

24       [4]     Plaintiff also alleges that other individual contracts were entered into between OGS and OEMs pursuant to the Centralized Contract, and that many government entities
25  therefore made their DRAM-containing purchases from OEMs "with the Centralized Contract as a framework."  See Complaint at ¶¶ 76-79.  These allegations cannot save plaintiff's
26  argument, however, since plaintiff nowhere alleges that the government entities were themselves ever assigned any direct purchaser claims by the OEMs, let alone that the
27  government entities in turn assigned those claims to plaintiff State of New York.  Without this nexus alleged, plaintiff cannot establish that it is a direct purchaser standing in the shoes of
28  the government entities.

United States District Court

For the Northern District of California

no allegation in the present complaint stating either that the government entities at issue have requested that the present action be instituted on their behalf, or that even identify the entities at issue.

New York v. Cedar Park Concrete Corp., 665 F. Supp. 238, 241-42 (S.D. N.Y. 1987), is remarkably on point, and proves instructive.  There, the court considered the same issue – i.e., whether the state could properly represent government entities in an antitrust action seeking treble damages pursuant to the Clayton Act, where the state also sought damages for violation of the Donnelly Act.  See id.  As here, no class action was pled, and the court looked to state statutes to see if a representative suit was authorized. In construing the same Donnelly Act provision that plaintiff cites to this court, the Cedar Park Concrete court held that a predicate had to be established in order to prove that the State Attorney General had been "requested" to act on behalf of the state entities.  While the court found that a sufficient predicate had been established with respect to one state entity, the court found that the "other state subdivisions on whose behalf the state of New York sues .. are not named in the complaints" and that "in view of the need early in the litigation to identify state-affiliated purchasers, we believe the complaints should be dismissed insofar as they purport to state treble damages claims on behalf of unidentified state subdivisions."  Id. at 242.

The court adopts this reasoning here.  As such, plaintiff's failure to allege either that the government entities in question requested that plaintiff bring suit on their behalf, or to name or identify the government entities in question, means that plaintiff's representative claim on behalf of those government entities must be dismissed insofar as the Donnelly Act is concerned.

Plaintiff's arguments with respect to New York Executive Law §§ 63(1) and 63-c(1) fare no better.  Although it is true that the first of these provisions, for example, does provide statutory authority for the State Attorney General to prosecute and defend "all actions and proceedings in which the state is interested," it nowhere mentions suit on

United States District Court

For the Northern District of California

1   behalf of government entities, let alone authorizes representative actions on behalf of the

2   government entities on whose behalf plaintiff sues here.  See, e.g., Complaint at ¶ 10

3   (defining "State Entities" as "all state and local government branches, departments,

4   agencies, subdivisions and other entities...")(emphasis added).  As for N.Y. Executive Law

5   § 63-c(1), it specifically states that the State Attorney General's enforcement is limited to

6   violations of the section itself, which allows the Attorney General to bring a claim wherever

7   state or local government entities have had public funds or property unlawfully converted or

8   appropriated.  See N.Y. Exec. Law § 63-c(1)("The attorney-general shall commence an

9   action, suit or other judicial proceeding, *as prescribed in this section*, whenever he deems it

10  for the interests of the state so to do...")(emphasis added).  Here, plaintiff has not actually

11  alleged any cause of action pursuant to this law.

12         In sum, the court concludes that plaintiff has provided no legal authority expressly

13  authorizing plaintiff's representative claim under the Sherman Act on behalf of the unnamed

14  government entities alleged in plaintiff's complaint.  As such, plaintiff's claims in this regard

15  must be, and are, hereby DISMISSED.  Leave to amend is granted, however, in order to

16  allow plaintiff to cure the deficiencies noted herein with respect to the requisite showing that

17  must be made pursuant to the Donnelly Act's authorization for representative claims on

18  behalf of state government entities.  The court also notes that, given the general ambiguity

19  in plaintiff's complaint as to the specific entities on whose behalf plaintiff brings suit, and the

20  direct or indirect nature of those entities' DRAM purchases, plaintiff must allege in any

21  future amendment, the nature of the purchases made by specific government entities.  This

22  will enable the court to determine with specificity the purchases and entities upon which

23  plaintiff's representative claims are stated.

24         C.     Donnelly Act Claim

25         Defendants also challenge plaintiff's second claim for relief, which is brought

26  pursuant to New York's antitrust statute, the Donnelly Act.  See N.Y. Gen. Bus. Law § 342

27  et seq.  Plaintiff's Donnelly Act claim alleges that plaintiff is entitled to recover damages "on

28

10

United States District Court
For the Northern District of California

1  behalf of all State Entities" that purchased DRAM/DRAM products directly or indirectly from

2  defendants, and "on behalf of all natural persons in New York" who purchased

3  DRAM/DRAM products indirectly from defendants.  See Complaint at ¶ 92.  Plaintiff

4  furthermore alleges that it, "in its sovereign capacity, is also entitled to recover civil

5  penalties" pursuant to the Donnelly Act, and injunctive relief.  Id.

6     Defendants challenge plaintiff's claim on three grounds: (1) that plaintiff may not

7  bring a Donnelly Act claim on behalf of unnamed and unidentified governmental entities; (2)

8  that plaintiff may not bring a Donnelly Act claim that seeks damages on behalf of natural

9  persons; and (3) that plaintiff may not recover civil penalties under the Act.

10          1.     unnamed government entities

11     Defendants' argument that plaintiff may not bring a claim under the Donnelly Act on

12  behalf of unnamed entities, and plaintiff's arguments to the contrary, have already been

13  discussed above in connection with plaintiff's ability to file a representative claim on behalf

14  of these entities under the Sherman Act.

15     The same analysis that applied there, applies here.  In sum, while the Donnelly Act

16  does provide express statutory authority for the State Attorney General to sue on behalf of

17  "any political subdivision or public authority of the state," the Donnelly Act contemplates

18  that these government entities must be specifically identified, and it must affirmatively be

19  demonstrated that they have "requested" that the Attorney General bring suit on their

20  behalf.  See N.Y. Gen. Bus. Law § 342-b ("the [A]ttorney [G]eneral may also bring action

21  on behalf of any political subdivision or public authority of the state upon the request of

22  such political subdivision or public authority to recover damages for violations of section

23  three hundred forty of this article..."); New York v. Cedar Park Concrete Corp., 665 F.

24  Supp. 238, 241-42 (S.D. N.Y. 1987).  Since, as noted above, the government entities on

25  whose behalf plaintiff sues here are not identified in the complaint, nor is it alleged that they

26  have requested the Attorney General's representation, plaintiff's Donnelly Act claim on their

27  behalf is DISMISSED.

28

United States District Court

For the Northern District of California

1   As noted above, however, plaintiff is granted leave to amend in order to properly

2   name and identify the entities on whose behalf it brings suit.  And as required above,

3   plaintiff's indirect or direct purchaser status must be provided.

4   2.   damages on behalf of natural persons

5   Defendants argue that the Donnelly Act does not permit the Attorney General to

6   assert a damages claim on behalf of natural persons.  Plaintiff responds that the Attorney

7   General's authority to do so is grounded in two sources: its common law parens patriae

8   powers, and statutory law.

9   Preliminarily, and beginning first with the provisions of the Donnelly Act, the court

10   notes that defendants are correct in arguing that the Act itself does not authorize the

11   Attorney General to pursue damages claims on behalf of natural persons.  To be sure, the

12   Act *does* contemplate that the Attorney General may file claims "in behalf of the people of

13   the state...".  See N.Y. Gen. Bus. Law § 342.  However, the Act specifically limits such

14   claims to those seeking injunctive relief, or civil penalties under the Act.  See id. at § 342-a.

15   By contrast, the separate provision of the Act that expressly governs the Attorney General's

16   ability to pursue *damages* claims under the Act, unambiguously limits such actions to those

17   "on behalf of any political subdivision or public authority of the state."  See id. at § 342-b.

18   Presumably, the legislature knew how to include language granting the Attorney General

19   the right to sue "in behalf of the people of the state" in the Act's damages relief provision,

20   as it did so with respect to the provisions allowing actions for injunctive relief and civil

21   penalties.  Accordingly, the court concludes that the legislature's failure to include similar

22   language in the provision authorizing damages suits was deliberate.  As such, plaintiff may

23   not assert a claim for monetary damages under the Act on behalf of natural persons.

24   Plaintiff argues that the Attorney General's authority to bring such claims can

25   nonetheless be grounded in either common law, or other statutory law.  Ultimately, the

26   court is unpersuaded as to either ground.

27   The argument that the Attorney General has common law authority to bring

28

12

United States District Court

For the Northern District of California

1    monetary damages claims on behalf of natural persons (i.e., parens patriae authority) has

2    been discussed in detail, in connection with the court's related order on defendants' motion

3    to dismiss the claims filed by various other State Attorneys General.  See Order Granting in

4    Part and Denying in Part Defendants' Motion to Dismiss, State of California, et al. v.

5    Infineon Technologies AG, et al., C 06-4333 PJH (filed concurrently herewith, and

6    incorporated by reference).  As the court states therein, there is no broadly recognized

7    common law parens patriae right to pursue monetary damages claims, and cases

8    discussing the common law parens patriae right have generally been limited to cases

9    seeking injunctive or other equitable relief.  See, e.g., Hawaii v. Standard Oil Co., 405 U.S.

10   251; In re Multidistrict Vehicle Air Pollution, 481 F.2d 122, 131 (9th Cir. 1973)(distinguishing

11   availability of parens patriae authority for suits seeking injunctive relief, from suits seeking

12   damages).  This being the case, the court looks for the existence of any state law that

13   expressly authorizes a suit by the Attorney General for monetary damages on behalf of

14   natural persons.

15        Here, plaintiff has not cited any cases that support the proposition that the State

16   Attorney General is vested with parens patriae authority to institute suits for monetary

17   damages.  Plaintiff's reliance on In re Insurance Antitrust Litig., which states that a parens

18   patriae action can vindicate its state interest "by obtaining damages and/or an injunction," is

19   inapposite.  See, 938 F.2d 919, 927 (9th Cir. 1991), aff'd in part & rev'd in part sub nom.

20   Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993).  First, the language plaintiff relies

21   on is dictum.  Second, and more importantly, the court's statement was based directly on

22   its reading of the Supreme Court's language in Alfred L. Snapp & Son, Inc. v. Puerto Rico,

23   458 U.S. 592, 607 (1982).  The Snapp case, in turn, dealt with a parens patriae claim that

24   sought declaratory and injunctive relief only – not damages.  Moreover, People ex rel.

25   Spitzer v. Grasso, recently decided by a New York state appellate court, counsels against a

26   finding that the State Attorney General is vested with the authority sought by plaintiff.  See

27   836 N.Y.S.2d 40 (N.Y. App. Div. 2007).  There, the court considered whether the Attorney

28

13

United States District Court

For the Northern District of California

1  General's common law powers allowed the Attorney General to assert certain non-statutory

2  causes of action, which the Attorney General sought to allege alongside statutory causes of

3  action that were authorized by New York's Not-for-Profit-Corporation ("N-PCL") statute.

4  See id. at 41.  In its discussion, the court cited with approval previous state cases that

5  noted "[w]here the Legislature has not been completely silent but has instead made

6  express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish,

7  the court should ordinarily not attempt to fashion a different remedy, with broader

8  coverage."  See id. at 48.  To that end, the court ultimately found that, in view of the N-

9  PCL's many remedial choices, and the N-PCL's failure to even "hint" at the Attorney

10  General's authority to bring causes of action other than those authorized in the statute, the

11  Attorney General lacked such authority.  Id. at 49-50.

12      The court is persuaded by this reasoning.  In sum, in view of the Donnelly Act's

13  provisions setting forth the various remedies that the Attorney General is entitled to pursue,

14  none of which includes monetary damages on behalf of natural persons, the court

15  concludes that authority for such a suit under the Donnelly Act is lacking, and cannot be

16  premised on the Attorney General's general common law powers.

17       Plaintiff's secondary argument that authority for a parens patriae claim seeking

18  monetary damages may be grounded in New York statutory authority, is similarly flawed.

19  Plaintiff bases this argument on New York Executive Law § 63(12).  This statute does, as

20  plaintiff contends, authorize the State Attorney General to sue "in the name of the people of

21  the State of New York" in order to enjoin "repeated fraudulent or illegal acts" or "persistent

22  fraud or illegality in the carrying on, conducting or transaction of business."  See id.

23  However, while this provision *may* allow the Attorney General to sue on behalf of natural

24  persons as a result of fraud and illegality (and it is by no means clear that such a suit could

25  properly seek monetary damages), this is no way suffices to authorize similar Attorney

26  General actions under the *Donnelly Act*, particularly since the Donnelly Act itself, as noted

27  above, expressly denies the Attorney General such authority.  Moreover, although plaintiff

28

14

**United States District Court**
For the Northern District of California

1    relies on <u>In re Cardizem</u> and <u>In re Lorazepam</u> – cases also discussed in connection with

2    the various state attorney generals' motion papers – those cases are not controlling.  <u>See</u>

3    218 F.R.D. 508 (E.D. Mich. 2003); 205 F.R.D. 386 (D. D.C. 2002).  Furthermore, neither

4    case specifically discussed the authority of the State Attorney General to sue for *monetary*

5    *damages* on behalf of natural persons.

6        In sum, plaintiff has failed to point to any New York authorities that affirmatively vest

7    the State Attorney General with authority to assert a parens patriae claim for monetary

8    damages on behalf of natural persons, pursuant to the Donnelly Act.  In view of all the

9    above, the court concludes plaintiff's claim for damages under the Act on behalf of natural

10   citizens must be and is accordingly DISMISSED.

11                    3.    civil penalty under Donnelly Act

12       Finally, the parties dispute whether the State Attorney General may properly seek

13   civil penalties pursuant to the Donnelly Act.  The relevant provision of the Act provides:

14   "the attorney-general may bring an action in the name and in behalf of the people of the

15   state ... to recover a penalty ... for the doing in this state of any act herein declared to be

16   illegal, or any act in, toward or for the making or consummation of any contract, agreement,

17   arrangement or combination herein prohibited, wherever the same may have been

18   made...".  <u>See</u> N.Y. Gen. Bus. Law § 342-a.  Defendants assert that this language plainly

19   requires plaintiff to allege either that an illegal contract was entered into in the State of New

20   York, or else that some act in New York is or was "preparatory" to the creation of an illegal

21   agreement.  Plaintiff's complaint, defendants continue, fails to make any such allegation.

22   Plaintiff, in response, contends that its allegations relating to IBM, an OEM "headquartered"

23   in New York, are sufficient.  <u>See, e.g.</u>, Complaint at ¶¶ 38, 45, 47, 50-51, 58.

24       Preliminarily, the court must decide what type of "acts" the relevant provision of the

25   Donnelly Act requires plaintiff to allege.  Defendants are correct that the plain language of

26   the statute permits civil penalties to be recovered for the "doing in this state" of certain

27   "acts" – i.e., the doing of certain acts in New York specifically.  <u>See</u> N.Y. Gen. Bus. Law §

28

                                            15

United States District Court

For the Northern District of California

1   342-a.  Defendants are also correct that under the language of the Act, qualifying acts

2   might include either entering into the alleged price-fixing conspiracy in New York, or acts of

3   preparation completed in New York in order to enter into a price-fixing conspiracy

4   elsewhere.  See id.  However, contrary to defendants' interpretation, in stating that a

5   qualifying act may be one that goes "toward or for the making or consummation of any

6   contract, agreement, arrangement or combination herein prohibited," this court interprets

7   the Act as requiring only that an act be done in the State of New York that bears on the

8   defendants' completion of their price-fixing agreement – even if the agreement was entered

9   into elsewhere.  See N.Y. Gen. Bus. Law § 342-a.

10      The question, then, is whether plaintiff's complaint alleges, at a minimum, an act

11  done in New York, that bears on the consummation of defendants' global price-fixing

12  conspiracy.  In this respect, plaintiff's allegations are sufficient.  Plaintiff alleges that "New

13  York residents, businesses, schools and government entities purchased significant

14  quantities of products containing price-fixed DRAM chips."  See NY AG Complaint, ¶ 5.

15  Plaintiff also alleges that numerous state entities purchased DRAM from OEMs, including

16  IBM, and that such purchases are generally in the hundreds of millions of dollars.  Id. at ¶¶

17  72-79.  Plaintiff furthermore alleges that natural persons in New York paid higher prices for

18  DRAM than they would have in a competitive market."  See id. at ¶ 91.  These allegations

19  demonstrate that consumers in New York, as well as state entities and businesses, paid

20  illegally high prices for DRAM.  The purchase of a product at an artificial overcharge, is an

21  act toward the consummation of defendants' price-fixing conspiracy.  As such, the court

22  concludes that plaintiff's allegations sufficiently set forth a basis for a civil penalty pursuant

23  to New York General Business Law § 342-a.

24      Accordingly, and in view of all the above, the court DENIES defendants' motion to

25  dismiss plaintiff's Donnelly Act claim, to the extent it seeks a civil penalty pursuant to New

26  York General Business Law § 342-a.

27

28

16

**United States District Court**
For the Northern District of California

1

D.    Executive Law § 63(12)

2       Defendants argue that plaintiff's claim pursuant to New York Executive Law § 63(12)

3  is also deficient in several respects: (1) the claim itself is untimely; (2) plaintiff lacks

4  authority to assert claims on behalf of unnamed government entities; (3) all actions

5  pursuant to the statute must be filed in New York state courts; and (4) no treble damages

6  are permissible under the statute.

7             1.    untimeliness

8       Defendants contend that plaintiff's claim is subject to a three year statute of

9  limitations.  Specifically, since plaintiff alleges that the claim is premised on statutory

10 violations under the Sherman and Donnelly Acts, <u>see</u> Complaint at ¶ 94, defendants argue

11 that the proper statute of limitations is the three year limitations period set forth in N.Y.

12 C.P.L.R. § 214(2), which governs "liabilities imposed by statute."  As such, defendants

13 assert that the complaint – filed in July 2006 – was untimely, since the conduct alleged

14 therein ceased in June 2002.  Plaintiff, in response, contends its claim pursuant to

15 Executive Law § 63(12) is governed by a six year statute of limitations rather than the three

16 year statute, and that even under the three year statute, the limitations period has been

17 tolled.

18       Beginning first with the applicable statute of limitations period, plaintiff is correct that

19 the six year limitations period applies, rather than the three year limitations period.  It is

20 undisputed that plaintiff's claim is premised on statutory provisions, and that under N.Y.

21 C.P.L.R. § 214(2), actions based on statutes are normally subject to a 3 year limitation

22 period.  *However*, plaintiff is correct that New York's highest court has expressly stated that

23 section 214(2) will nonetheless *not* apply where the statute upon which an action is based

24 had a common law precedent.  <u>See State v. Cortelle Corp</u>., 38 N.Y.2d 83, 87 (N.Y. 1975);

25 <u>see also Gaidon v. Guardian Life</u>, 750 N.E. 2d 1078, 1092 (N.Y. 2001).  Indeed, in <u>Cortelle</u>,

26 the court considered an identical claim brought pursuant to Executive Law § 63(12), and

27 held that the six year statute of limitations applied.  <u>See</u> 38 N.Y.2d at 88-89.  Although

28

United States District Court

For the Northern District of California

1   Cortelle was premised on a fraud claim, its reasoning applies here, as plaintiff has relied on

2   case law indicating that, like the fraud claim in Cortelle, an antitrust claim was also

3   recognized at common law.  See Judd v. Harrington, 34 N.E. 790, 791 (N.Y. 1983).  In view

4   of this authority, the court finds that N.Y. C.P.L.R. § 214(2) is inapplicable, and the six year

5   limitations period provided pursuant to N.Y. C.P.L.R. § 213(1) applies instead.

6        Defendants attempt to avoid this conclusion by noting that antitrust claims for

7   damages are to be considered differently than antitrust claims in equity, which were the

8   only type of antitrust claims allowable at common law.  Defendants fail to support this

9   argument with any controlling or persuasive authority, however.  Pauk v. Bd. of Trustees,

10  for example, dealt with the borrowing of state limitations statutes in the context of a federal

11  section 1983 cause of action, and Hartnett v. N.Y. City Transit Auth. also dealt with an

12  inapposite law, Labor Law § 27-a(10).  See 654 F.2d 856 (2d Cir. 1981); 612 N.Y.S.2d 613

13  (N.Y. App. Div. 1994).

14       In sum, the court finds that the six year statute of limitations governs here, and

15  plaintiff's claim is therefore timely.  In view of this finding, it is unnecessary for the court to

16  reach the question whether equitable tolling would nonetheless apply under a 3 year

17  statute of limitations.  Defendants' motion to dismiss this claim on timeliness grounds is

18  DENIED.

19              2.    government entities

20       Defendants once again raise the argument that the State Attorney General is not

21  authorized to assert representative claims for monetary damages on behalf of government

22  entities for violations of the federal or state antitrust acts.

23       For the same reasons as discussed above in connection with plaintiff's Sherman Act

24  and Donnelly Act claims, defendants are correct that Executive Law § 63 does not vest the

25  State Attorney General with authority to bring representative claims on behalf of unnamed

26  government entities.  Nor do any other statutes provide such authority.  As such, plaintiff's

27  claim on behalf of government entities pursuant to New York's Executive Law § 63(12) is

28

18

United States District Court

For the Northern District of California

1    accordingly DISMISSED.

2              3.    state court limitation

3         Defendants claim that Executive Law § 63(12) expressly mandates that all actions

4    "be commenced in New York State Supreme Court."  <u>See</u> N.Y. Exec. Law § 63(12).

5    Plaintiff acknowledges this, but argues that this court's authority to hear the claim is based

6    on its supplemental jurisdiction stemming from the court's jurisdiction over the federal

7    Sherman Act claim.  Accordingly, claims plaintiff, jurisdiction is conveyed by federal statute,

8    which supercedes the state statute.

9         Defendants are correct that Executive Law § 63(12) law explicitly states that any

10   claims brought under it must be commenced in state court.  <u>See</u> N.Y. Exec. Law § 63(12);

11   <u>see also New York v. Gen. Motors Corp</u>., 547 F. Supp. 703, 704 n.2 (D.C. N.Y. 1982).

12   However, plaintiff is also correct that it may properly assert a federal claim in federal court,

13   thereby allowing the court to exercise supplemental jurisdiction over plaintiff's state law

14   claims.  <u>See</u> 28 U.S.C. § 1367 ("the district courts shall have supplemental jurisdiction over

15   all other claims that are so related to claims in the action within such original jurisdiction

16   that they form part of the same case or controversy under Article III of the United States

17   Constitution...").

18        As such, despite the fact that Executive Law § 63(12) contains a procedural

19   limitation on the place in which suit may be brought, this court may nonetheless assert

20   supplemental jurisdiction over the claim.  Accordingly, the court hereby DENIES

21   defendants' motion to dismiss plaintiff's claim on this ground.

22             4.    treble damages

23        Finally, defendants argue that Executive Law § 63(12) does not provide for treble

24   damages.

25        Defendants are correct.  The statute states that the Attorney General may apply for

26   "restitution and damages," along with other forms of relief.  <u>See</u> N.Y. Exec. Law § 63(12).

27   The court declines to read treble damages into the word "damages," however, both as a

28

19

**United States District Court**
For the Northern District of California

1    matter of sound statutory construction, and in view of the fact that the legislature has

2    elsewhere included treble damages provisions in statutory provisions, thus proving that its

3    omission from the present statute was intentional.  See, e.g., N.Y. Gen. Bus. Law § 340 et

4    seq. (i.e., the Donnelly Act).

5       Moreover, plaintiff's reliance on supporting case law is misplaced, since the cases

6    cited by plaintiff did not involve recovery of treble damages pursuant to Executive Law §

7    63(12), or else did not involve actual discussion of the precise issue before the court.

8       In sum, the court accordingly DISMISSES plaintiff's claim pursuant to Executive Law

9    § 63(12), to the extent plaintiff alleges recovery of treble damages.

10       E.      Cartwright Act Claim

11       Defendants move to dismiss plaintiff's claim under the Cartwright Act, to the extent

12    that plaintiff seeks recovery on behalf of both government entities, and natural persons.

13       For the same reasons discussed by the court in its related order on defendants'

14    motion to dismiss in State of California et al., v. Infineon Technologies AG, et al.,

15    defendants are correct.  The Cartwright Act expressly states that only the California

16    Attorney General may bring suit on behalf of natural persons.  Likewise, the Cartwright Act

17    nowhere allows for non-California Attorneys General to bring a representative action on

18    behalf of government entities.  As such, plaintiff's claim on behalf of natural persons and

19    entities under the Cartwright Act, is hereby DISMISSED.

20       F.      Conclusion

21       For all the foregoing reasons, defendants' motion to dismiss plaintiff's complaint is

22    GRANTED in part and DENIED in part, as follows:

23       1.      With respect to plaintiff's claim brought pursuant to the Sherman Act,

24    the court hereby DISMISSES all claims seeking recovery on behalf of indirect purchasers,

25    to the extent such claims are pled in paragraphs 86 and 10 of the complaint.  All

26    representative claims on behalf of unnamed government entities are also DISMISSED,

27    although leave to amend these claims is granted, as stated herein.

28

**United States District Court**
For the Northern District of California

1          2.     With respect to plaintiff's claim pursuant to New York's Donnelly Act,

2 plaintiff's claim on behalf of government entities is DISMISSED, with leave to amend as

3 stated herein.  Plaintiff's claim for monetary damages on behalf of natural persons is

4 DISMISSED with prejudice.  Defendants' motion to dismiss plaintiff's claim to the extent it

5 seeks a civil penalty, however, is DENIED.

6          3.     With respect to plaintiff's claim brought pursuant to Executive Law §

7 63(12), defendants' motion to dismiss the claim on timeliness grounds, and on grounds that

8 the claim is barred due to procedural restrictions, is DENIED.  Plaintiff's claim on behalf of

9 government entities is DISMISSED with prejudice, as is plaintiff's request for recovery of

10 treble damages.

11          4.     With respect to plaintiff's claim on behalf of natural persons and

12 government entities pursuant to the California Cartwright Act, it is DISMISSED with

13 prejudice.

14     Leave to amend is permitted *only* as specified herein.  Amendment as to additional

15 matters is not permitted without prior leave of court.  Any amended complaint shall be filed

16 no later than **October 1, 2007**.

17

18 **IT IS SO ORDERED.**

19 Dated: August 31, 2007

20                                        _____

21                                 PHYLLIS J. HAMILTON
                                  United States District Judge

22

23

24

25

26

27

28